## PAULSON v. UNITED STATES.
### HOLDEN v. SAME.
#### Nos. 1188, 1189.

Circuit Court of Appeals, Tenth Circuit.
June 14, 1935.

Glenn Porter, of Wichita, Kan. (H. W. Hart, Enos E. Hook, and Getto McDonald, all of Wichita, Kan., on the brief), for appellants.

Warren F. Wattles, of Washington, D. C. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Frank J. Ready, Jr., and Lester L. Gibson, Sp. Assts. to the Atty. Gen., and Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for the United States.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

These separate actions were instituted to recover the respective amounts erroneously paid to appellants as refunds of income taxes. Section 610 of the Revenue Act of 1928 (26 USCA § 2610) provides that a suit of this kind must be brought within two years after the making of such a refund or before May 1, 1928, whichever is later. The amendment of May 10, 1934 (48 Stat. 756, § 502 (a), 26 USCA § 2610 (c), providing that the suit may be brought at any time within five years after the refund is made if it is induced by fraud or misrepresentation of a material fact has no application and may be dismissed without further consideration. The question presented—common to both cases—is whether the two-year period runs from the date on which the Commissioner of Internal Revenue finally approves the schedule of refunds and credits or from the delivery of the check in payment of the refund.

The facts in the first case are that Peder Paulson, father of appellant, owned a leasehold estate covering land situated in Kansas which entitled him to certain rental and royalty. In March, 1918, Peder Paulson and wife executed and delivered written assignments under which appellant and five other children were each to receive an undivided one-eighth interest in such rental and royalty with provision that Peder Paulson or any person designated by him should collect the income and make distribution of it among the several children. Appellant received $27,342.02 from his father as his distributive share of the fund during the year 1919 and included that sum in his income tax return for that year. The tax thereon in the sum of $3,080.23 was seasonably paid. He later signed a written waiver extending to December 31, 1925 the time within which an assessment for the year 1919 might be made. The Commissioner subsequently determined that the father was liable for the tax upon the money thus distributed, not the children. He signed a certificate of overassessment on November 5, 1926, in which it was certified that appellant was entitled to a refund of the sum stated. The certificate was listed in the usual manner and forwarded to the Collector in Kansas to determine whether appellant owed taxes against which the amount should be credited. The Collector responded that he owed no taxes, and on or about November 30, 1926, the Commissioner signed the schedule of refunds and credits, the principal plus accrued interest then being $4,313.33. Check for that amount was issued March 15, 1927, and delivered to appellant on the 19th. The Board of Tax Appeals decided on February 14, 1928, that the father was not liable for the tax. Paulson v. Commissioner, 10 B. T. A. 732. In consequence of that decision, this suit was filed on March 18, 1929, to recover the amount refunded.

The facts in the other case are that George Holden, deceased husband of appellant, owned the record title to 240 acres of land in Kansas. Holden and appellant executed assignments of parts of the royalty receivable from an oil and gas lease covering a portion of the land, for which $95,000 was paid as bonuses in 1919. They filed separate returns for that year, each including therein one-half of the bonuses thus received. Their income taxes of $10,217.37 and $8,580, respectively, were paid. Holden died August 21, 1921, leaving an estate exceeding $25,000 in value at the time this suit was filed, all of which is owned by appellant.

On review of their separate returns, the Commissioner determined that Holden should have included the entire bonuses in his return, and that appellant should not have included any part of them in hers. He thereupon found an additional tax of $21,376.94 against the estate and on January 7, 1925, issued a certificate of overassessment of $8,580 against appellant, which was forwarded in like manner to the Collector in Kansas to determine whether she owed taxes against which that sum should be extinguished as a credit. The Collector certified on January 27, 1925, that he found no such taxes, and on February 27, 1925, the Commissioner signed a schedule of refunds and credits showing a refund of principal and accrued interest due appellant in the sum of $10,869.07. Check for that amount was issued on March 16th and mailed to the Collector for delivery. It was retained for several weeks without tender or delivery, and then returned to the accounting office of the government and canceled. It is agreed between the parties that if the check had been tendered appellant, she would have accepted it. The Commissioner, on March 11, 1927, without action or acquiescence on the part of appellant, signed a second schedule of refunds and cred-

its showing the same sum due. Check for that amount was issued April 11, 1927, and delivered to her later in the month.

It was determined in a suit brought by the United States against appellant, as devisee under the will of her deceased husband and owner of the assets of the estate, to recover the additional tax previously referred to, that Holden and appellant owned the land covered by the lease jointly, each owning an undivided half interest therein, and that only one-half of the income derived from the bonuses belonged to him. Decree was entered denying recovery of the additional tax. This action was filed April 9, 1929, to recover the amount refunded in the manner indicated.

The defense interposed in each case was that of limitation. No contention was made that appellants were entitled to retain the respective sums refunded, the sole contention in each instance being that the suit was filed more than two years after the making of the refund. The court rejected that view and rendered judgments accordingly. These appeals followed.

■■■ Resolution of the cases depends upon the proper interpretation of the controlling statute of limitation. It is contended that the act of the Commissioner in approving and signing the schedule of refunds and credits constitutes the making of a refund, and that the period runs from that time. That act constitutes a determination by the administrative officer having jurisdiction in the premises that the sum is due. It is an adjudication of an overpayment of taxes, and that a refund is in order, but the refund is made when the money is paid. Refund means to pay back, return, restore, make restitution. That is the ordinary and popular concept of the word, and in the absence of a contrary indication, it must be presumed that the Congress used it in that generally accepted sense. The return, restoration, and restitution of the money is made when the check in payment of the obligation is delivered. Communication with the taxpayer absent, the preceding actions are exclu-

sively intradepartmental or interdepartmental, and may be changed, corrected, revised, or rescinded, as circumstances require. The Commissioner may declare the schedule erroneous or inadvertent and erase his signature from it without violating any rights of the taxpayer. Daube v. United States, 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261. Ordinarily a statute of limitation does not begin to run until a suit could be brought. Certainly it cannot be contended that a suit of this nature may be maintained and judgment secured after the schedule of refunds and credits has been approved, but before the money is paid to the taxpayer.

Appellants place strong reliance upon the cases of Girard Trust Co. v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524, and United States v. Swift & Co., 282 U. S. 468, 51 S. Ct. 202, 75 L. Ed. 464. Neither supports the contention advanced for reversal of these judgments. The statute under consideration in the first expressly provided that interest should be included from the date of the allowance of a claim for refund. The court held that the act of the Commissioner in approving the schedule of refunds and credits constituted the allowance of the claim, and that interest ran from that date. The statute construed in the second case made like provision with respect to a credit, and it was similarly held that the approval of the schedule constituted allowance of the credit, hence interest should be included from that date. But here, the statute does not provide that the suit shall be filed within two years after the refund is allowed. On the contrary, it is provided textually that the period shall run from the time the refund is made. The distinction between the act of allowing a refund and that of refunding the money is manifest, and the supposed analogy between the two cited cases and these emphasizes the clear and decisive difference. Congress could have provided that suit must be filed within two years after the refund is allowed; but for reasons sufficient unto itself, it provided otherwise.

The judgments are severally affirmed.