**J. Clark AKERS and Eleanor M. Akers**

v.

**UNITED STATES of America.**

**Civ. A. No. 80–3261.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Dec. 29, 1981.

---

Mark H. Westlake, Nashville, Tenn., for plaintiffs.

Hal D. Hardin, U. S. Atty., Nashville, Tenn., Robert E. Rice, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Plaintiffs bring this action pursuant to 28 U.S.C. § 1346(a)(1) for the refund of amounts paid as taxes. The matter is presently before the Court on cross-motions for summary judgment. Defendant's motion will be granted for the reasons discussed below.

On March 22, 1977, the Commissioner of Internal Revenue [hereinafter the Commissioner] forwarded a Notice of Deficiency to Mr. Clark Akers and Ms. Eleanor M. Akers imposing an additional tax liability for their 1973 income taxes in the total amount of $3,227.75. Plaintiffs paid this amount by check dated March 28, 1977. On April 25, 1977, the Commissioner notified the tax payers of the receipt of their tax payment in the amount of $3,227.75 as a credit against the tax assessment. That notice showed interest on the tax assessment of $664.40 due and unpaid. This amount was paid with tax payers' check dated May 3, 1977.

By check dated May 13, 1977, the Internal Revenue Service [hereinafter the IRS] refunded $3,019.93 to the taxpayers. The check was designated "12/73 . . . Tax Refund". Approximately two years later, April 4, 1979, the Commissioner's representative, Mr. Mike Jennett, requested payment of $3,307.15 to satisfy the balance then current for the tax year 1973. Jennett's letter asserted that the refund by check dated May 13, 1977 was not erroneous and that the amount due could be "collected like any other unpaid assessment".[1] (Affidavit of Mark H. Westlake, Exhibit F).

The taxpayers paid the amount under protest by check dated May 14, 1979. This amount was recorded as paid on Form 4340, Certificate of Assessments and Payments, on May 15, 1979. (Memorandum in support of support of defendant's opposition to plaintiff's motion for summary judgment and cross-motion for summary judgment, exhibit A). This same form indicates that the date the IRS mailed the erroneous refund, paid by check dated May 13, 1977, was May 16, 1977.

Plaintiffs contend that the claim satisfied by check dated May 14, 1979 and paid under protest was barred by the statute of limitations. An answer to the contention requires a brief discussion of the possible statutory methods of collecting taxes and refunds.

Section 6501 of the Internal Revenue Code of 1954 [hereinafter the Code] requires assessment of taxes imposed under the Code within 3 years after the filing of the return (except in cases not here relevant). Section 6502 of the Code provides that the tax, once assessed may be collected within 6 years of the assessment. Sections 7405(a) and (b) of the Code provide for the recovery of amounts erroneously refunded through a civil action brought in the name of the United States. Section 6532(b) provides a 2 year statute of limitations for actions brought under section 7405(a) and (b) of the Code. Sections 6514(a)(1) defines several instances in which a refund is considered erroneous. Erroneous refunds so defined are recoverable under section 7405(a). Section 6514(a)(1) is not relevant in the present case save for reference to it

---

1. For reasons explained in more detail later, the refund by check dated May 13, 1977, was erroneous. The Jennett letter was in error, and the avenue for collection suggested in that letter did not exist. The significance of this mistake is addressed later in the opinion.

in the Jennett letter. Section 7405(b) is the appropriate provision in this case.

The IRS' first effort at recovery of the money refunded was by letter dated April 4, 1979. This letter maintained that the refund of May, 1977 was not erroneous under section 6514(a)(1) of the Code, and advanced another reason for the refund's issuance. The IRS asserted that the refund could be recovered "like any other unpaid assessment". In other words, recovery was possible under section 6502 of the Code allowing the IRS 6 years from the date of the assessment. However, a similar position was expressly rejected by the Court in *United States v. Young*, 79–2 U.S.T.C. ¶ 9609 (D.C.Del.Civil Action No. 76–190, August 28, 1979). *See also LaFollett v. United States*, 173 F.Supp. 388, (S.D.Cal.1959), 176 F.Supp. 192 (S.D.Cal.1959). Rather, the proper procedure requires that suit be brought under section 7405(b) of the Code which is governed by a 2 year statute of limitations. § 6532(b). The source of the confusion on the part of the IRS may well have been in the reference to section 6514(a)(1) which defines particular types of erroneous refunds recoverable by suit under section 7405(a) of the Code. Though the present situation is not within Code sections 6514 and 7405(a) as correctly stated in the IRS letter of April 4, 1977, it is within section 7405(b) of the Code which deals with any refund erroneously made other than those erroneous as defined in section 6514.

■ To summarize the above discussion, the appropriate procedure for recovery of the refund in this case is that provided in section 7405(b) of the Code, with its concurrent 2 year statute of limitations as provided in § 6532(b) of the Code. Plaintiffs contend that the payment by check dated May 14, 1979, was more than 2 years after the refund by check dated May 13, 1977.

This position is erroneous. The operative date in relation to the statute of limitations is not the date of the check's issuance, but the date on which the check was received by the taxpayer. *Paulson v. United States*, 78 F.2d 97 (10th Cir. 1935); *United States v. Woodmansee*, 388 F.Supp. 36 (D.C.Calif. 1975), rev'd on other grounds, 578 F.2d 1302 (9th Cir. 1978). *See also United States v. Wurts*, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938). In *Paulson, supra,* the first of simultaneously decided cases, money was refunded to a taxpayer because the IRS believed his father was liable for the tax. The decision of the Commissioner to refund the money was made on or about November 30, 1926 when he signed the schedule of refunds and credits. A check was issued on March 15, 1927. A Court later found the taxpayer's father not liable for the tax and the IRS responded by filing suit against the taxpayer to recover the money mistakenly refunded. The suit was filed on March 18, 1929. The taxpayer in *Paulson* argued that the statute of limitations of 2 years had begun to run on November 30, 1926 when the refund was approved. The March 18, 1929 suit would then be time barred. The Court rejected this argument reasoning that the statute began to run only when the taxpayer had an enforceable right to the refund. This occurred on March 19, 1927 when the taxpayer received the refund check, not when the refund was approved or when the refund check was issued.

■ In the present case there is uncontroverted evidence[2] that the IRS' check dated May 13, 1977, was in fact mailed May 16, 1977. The earliest date on which the taxpayers could have received the check was May 16, 1977, and more than likely the receipt of the check was at a later date. This same evidence indicates that the tax-

---

**2.** This evidence is Form 4340 (Memorandum in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment, Exhibit A). This document is under seal and bears a signature purporting to be a thestation or execution. Under F.R.E. 902(1) this document is self-authenticating and therefore admissible absent extrinsic evidence of authenticity. The document is also hearsay, but falls within an exception to the general rule of hearsay inadmissibility for public records and reports. F.R.E. 803(8). The plaintiffs assert that May 13, 1977 is the date of the refund, but have put forward no evidence bearing on this point other than the date on the refund check. This is not sufficient. Fed.R. C.P. 56(e) requires the plaintiffs to do more to avoid summary judgment.

payers' check dated May 14, 1979, was received by the IRS on May 15, 1979. This May 15, 1979 payment by the taxpayers is within the 2 year statute of limitations measured from May 16, 1977. Even if the date on each check were the significant date, Fed.R.Civ.P. 6(a) provides that time periods are computed by excluding from the computation the day of the act or event giving rise to the action. Thus, a 2 year statute of limitations linked to an event on May 13, 1977 would run through May 14, 1979. The May 14, 1979 check of the taxpayers' would be within the statute even if May 13, 1977 was the operative date. Of course, as discussed above, the dates upon which the respective parties received the checks are the operative dates. Again, Fed. R.Civ.P. 6(a) mandates a finding that the IRS' receipt of the taxpayers' check on May 15, 1979, was within the statute begun by the taxpayers' receipt of the IRS' check which could have occurred no earlier than May 16, 1977.

Having found that the taxpayers' payment was made prior to the expiration of the statute of limitations, it is still necessary to consider the impact of the April 4, 1977 letter from the IRS representative, Mr. Jennett. In this letter, the IRS asserted an improper ground for collection of the taxes due. It is necessary to determine whether the IRS must use only proper procedures in collecting a tax. There is authority stating that collection by improper means of a proper tax which is not time barred is an effective collection. *Champ Spring Co. v. United States*, 47 F.2d 1 (8th Cir. 1931). In *Champ Spring*, the government had refunded excise taxes paid to the taxpayer upon an internal determination that the excise tax was not applicable to the taxpayers activity. The internal finding of inapplicability was later reversed, and the IRS sought recovery of the mistakenly refunded money. While the proper procedure for recovery involved an action for funds erroneously paid, the government attempted to recover the money through threats of distraint. The statute of limitations on the proper action had not run at the time when the taxpayer in fact paid the money due.

In a suit by the taxpayers to recover the erroneous refund repaid, the Court held that the taxpayer could not recover on the basis of the irregularities in the collection. This opinion has been followed in the income tax context. *American Security and Trust Co. v. Tait*, 5 F.Supp. 337 (D.Md. 1933), citing *Champ Spring* at 344.

Summary judgment is appropriate in this case therefore because the money refunded to the taxpayer was recovered within the applicable statute of limitations, and any irregularity in the method of recovery does not invalidate the collection of the tax.