UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman D. CARTER,
Defendant–Appellant,

Cecilia P. Carter, Defendant.

No. 89–35526.

United States Court of Appeals,
Ninth Circuit.

Submitted June 1, 1990.*

Decided July 3, 1990.

Gary R. Allen, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Norman D. Carter, Tacoma, Wash., pro se.

Before KOELSCH, CHOY and BEEZER, Circuit Judges.

CHOY, Circuit Judge:

Norman D. Carter appeals pro se the district court's orders granting the United States' motion for summary judgment and denying Carter's motion for reconsideration.[1]

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

1. Carter's wife, Cecilia Carter, was a party to the district court proceedings but did not sign the notice of appeal. On December 27, 1989, Cecilia Carter filed an affidavit purporting to correct the record on appeal and stating that all of the pleadings on appeal should be read as if she had signed them.

In this circuit, however, a pro se appellant must personally sign the notice of appeal. *See Carter v. Commissioner,* 784 F.2d 1006, 1008 (9th Cir.1986). Cecilia Carter filed her affidavit after the government had already filed its brief noting the fact that she had failed to sign the notice of appeal. Moreover, the Carters are the same pro se litigants who were involved in *Carter v. Commissioner,* 784 F.2d at 1008, cited above. For these reasons, we do not consider Cecilia Carter's affidavit an amended notice of

*FACTS*

On December 8, 1987, the United States filed a complaint against Norman D. and Cecilia P. Carter (the "Carters") in the federal district court for the Western District of Washington. The government sought to reduce to judgment certain unpaid tax liabilities of the Carters and to recover under 26 U.S.C. § 7405(b) an erroneous tax refund paid to Norman Carter.

The case was scheduled for trial on April 17, 1989. On that date the government filed a motion for summary judgment, and the Carters filed a motion to dismiss. The trial was then postponed and put on a trailing calendar so that a higher priority criminal trial could proceed. When the case was called for trial on April 20, 1989, the Carters failed to appear. The district court then granted the government's motion for summary judgment.

The Carters filed a motion for reconsideration on June 5, 1989 and a supplemental motion for reconsideration on June 26, 1989. The district court denied the Carters' motion on July 14, 1989. Norman Carter appeals both the order granting summary judgment for the United States and the order denying his motion for reconsideration.

*I. Jurisdiction*

 The United States contends that Carter's appeal from the order of summary judgment is untimely, and that this court therefore lacks jurisdiction to review the grant of summary judgment. This contention lacks merit.

When a federal agency is a party to a civil case in which an appeal is permitted, the appellant must file the notice of appeal within sixty days after entry of the challenged judgment. Fed.R.App.P. 4(a)(1). "The period for filing a notice of appeal begins upon 'entry' of the judgment or order appealed from." *Allah v. Superior Court,* 871 F.2d 887, 890 (9th Cir.1989). The judgment or order must be entered in compliance with Fed.R.Civ.P. 58. *Id.; see*

*also United States v. Indrelunas,* 411 U.S. 216, 222, 93 S.Ct. 1562, 1565, 36 L.Ed.2d 202 (1973) (per curiam).

Rule 58 requires that every judgment be set forth on a separate document, distinct from any opinion or memorandum, even if the district court's order is stamped and listed as "entered" on the court docket sheet. Fed.R.Civ.P. 58; *Allah,* 871 F.2d at 890. If no separate document has been entered, a notice of appeal is considered timely even if filed after the normal time for appeal has expired. *Allah,* 871 F.2d at 890.

Even though the order of summary judgment was stamped "entered" on April 20, 1989, the district court never entered judgment on a separate document as required by Fed.R.Civ.P. 58. Carter's appeal from that judgment is therefore timely even though he filed his notice of appeal on July 28, 1989 after the normal time for appeal had expired. *Allah,* 871 F.2d at 890. Thus, this court has jurisdiction over his appeal from the order of summary judgment.

*II. Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

appeal and any issues pertaining to her tax liabilities will not be considered in this appeal. *See id.* (court lacked jurisdiction to hear wife's

appeal where husband signed notice of appeal for both of them).

A plaintiff's motion for summary judgment should be denied if a defense presents significant factual issues which should be tried. 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2734 at 405 (2d ed. 1983).

### A. Erroneous refund

■ Carter contends that the district court erred in granting summary judgment of the Government because the Government's action to recover the tax refund paid to Carter is barred by the statute of limitation. Carter contends that the limitation period began running on the date the government mailed the erroneous refund check, rather than the date he received the check. These contentions lack merit.

When the United States makes an erroneous tax refund to a taxpayer, the Government may bring a civil action to recover the refund. 26 U.S.C. § 7405(b);[2] *see United States v. Wurts*, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). Generally, the government must initiate a suit under section 7405(b) within two years after the refund was made. 26 U.S.C. § 6532(b);[3] *see Wurts*, 303 U.S. at 415, 58 S.Ct. at 638; *United States v. Fairbanks*, 95 F.2d 794, 795 (9th Cir.1938), *aff'd.* 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855 (1939). The refund is considered to have been made on the date the taxpayer received the refund check. *See Akers v. United States*, 541 F.Supp. 65, 67 (M.D.Tenn.1981); *United States v. Woodmansee*, 388 F.Supp. 36,

46 (N.D.Cal.1975), *rev'd on other grounds*, 578 F.2d 1302 (9th Cir.1978); *cf. Paulson v. United States*, 78 F.2d 97, 98–99 (10th Cir. 1935) (reasoning that a suit to recover an erroneous refund cannot be maintained until the money is paid to the taxpayer, and that limitation period ordinarily does not commence until suit can be brought).

The *Woodmansee* court explained the reasoning behind its holding, stating that "[a]t a minimum, payment is deemed made upon the ripening of a legal obligation on the part of the Internal Revenue Service to the taxpayer." 388 F.Supp. at 46. The court found that such an obligation arose when an account stated arose. *Id.* The court concluded that because receipt of a refund check by a taxpayer gave rise to an account stated, the date of receipt became the date the refund is made. *Id.* (citing *Daube v. United States*, 289 U.S. 367, 370–72, 53 S.Ct. 597, 598–99, 77 L.Ed. 1261 (1933)).[4]

The Government filed its complaint on December 8, 1987. The two-year limitation period of section 6532(b) bars the Government's erroneous refund claim only if Carter received the refund check before December 8, 1985. *See* 26 U.S.C. § 6532(b); *Akers*, 541 F.Supp. at 67; *Woodmansee*, 388 F.Supp. at 46.

Carter contends that the Government had the burden of proving that he received the check after December 8, 1985. We disagree.

---

**2.** Section 7405(b) provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States." 26 U.S.C. § 7405(b).

Section 6514 provides that certain refunds are erroneous if they were made after the limitation period in which a taxpayer may file a claim or suit for a refund has expired. *See* 26 U.S.C. § 6514.

**3.** Section 6532(b) provides that:

Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the

making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

**4.** Carter argues that the rule followed in cases such as *Akers* and *Woodmansee* contradicts conventional principles governing the date of payment or delivery in financial transactions. Appellant's Opening Brief at 19–21. As the government correctly notes, however, the cases Carter cites in support of his argument deal with the statute of limitations on assessments of tax liabilities under 26 U.S.C. § 6503, and with the valid transfer of negotiable instruments under Yugoslavian law. *See, e.g., United States v. Guaranty Trust Co.*, 293 U.S. 340, 346, 55 S.Ct. 221, 223, 79 L.Ed. 415 (1934); *Clodfelter v. Commissioner*, 527 F.2d 754, 755 (9th Cir.1975), *cert. denied*, 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 805 (1976).

The check was dated December 6, 1985, and negotiated on December 23, 1985. There is no evidence of when the check was actually mailed; nor did the Government proffer any evidence as to when Carter received the check. Instead, the Government insisted that Carter had failed to allege facts proving that he received the check before December 8, 1985.

In granting the government's motion, the district court found that "it would have been physically impossible for the Carters to receive the check that would toll the statute of limitations". December 6, 1985, the date of the refund check, apparently was a Friday. December 8, 1985 would therefore have fallen on a Sunday. The court apparently based its statement on the assumption that the check could not have been delivered within one day, or by Saturday, December 7, 1985, and that because there normally is no regular mail delivery on Sundays, the earliest Carter could have received the check was Monday, December 9, 1985.

Because the statute of limitation is an affirmative defense, it was Carter's burden to show that the section 6532(b) limitation period bars the Government's claim. *See* Fed.R.Civ.P. 8(c). Although Carter asserted that defense in both his answer and motion to dismiss, he failed to allege any facts showing that he received the check before December 8, 1985. Instead, he merely raised the erroneous legal argument that the limitation period commenced when the Government mailed the check. The date on which Carter received the check is an essential element of his statute of limitations defense. *See* Fed.R.Civ.P. 8(c). Therefore, because Carter did not make a showing "sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552, the district court did not err in granting the Govern-

ment's motion for summary judgment on the erroneous refund claim.

Carter also contends that even if the burden of proof properly rested on him, the court failed to afford him an adequate opportunity to present evidence to meet this burden. He bases this contention on the court's alleged failure to notify him of the new trial date after the trial was placed on the trailing calendar.

However, the grant or denial of summary judgment is based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of or in opposition to the motion, not on evidence adduced at trial. *See* Fed.R.Civ.P. 56(c). Therefore, Carter's contention that he should have been allowed to present evidence at trial lacks merit.

### B. Res Judicata

 Finally, Carter contends that the court's failure to notify him of the new trial date on the trailing calendar denied him the opportunity to present evidence that his taxes were abated for the 1980 and 1981 tax years in question.

On April 24, 1985, the United States Tax Court entered an order finding the Carters liable for taxes for the tax years 1980 and 1981. We affirmed that decision in *Carter v. Commissioner*, 784 F.2d 1006 (9th Cir. 1986). Carter is therefore bound by *res judicata* and may not relitigate the issue of his liability for taxes in 1980 and 1981. *See Russell v. Commissioner*, 678 F.2d 782, 785 (9th Cir.1982); *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).[5]

The district court did not err in granting summary judgment for the Government.

AFFIRMED.

---

**5.** Carter bases his contention that he has no tax liability for the tax years 1980 and 1981 on Notices of Adjustment showing an abatement of his tax liabilities for those years. As the Government notes, the notices indicate that du-

plicate assessments of Carter's tax liabilities had been entered on both the master and nonmaster files; only the assessments on the nonmaster file were abated.