**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-17083 |
| *Plaintiff-Appellant*, | D.C. No. 3:20-cv-08072-JAT |
| v. | |
| JEFFREY S. PAGE, | ORDER AND AMENDED OPINION |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted September 11, 2023
Phoenix, Arizona

Filed June 26, 2024
Amended September 12, 2024

Before:  Ronald M. Gould, Andrew D. Hurwitz, and
Roopali H. Desai, Circuit Judges.

Order;
Opinion by Judge Desai

# SUMMARY[*]

## Tax

The panel reversed the district court's dismissal, as time-barred, of a complaint brought by the United States to recover an erroneous tax refund, and remanded.

Due to a clerical error, the Internal Revenue Service ("IRS") mailed taxpayer a tax refund check in excess of what it should have been.  Taxpayer eventually returned only a portion of the refund.  The government sued under 26 U.S.C. § 7405 to recover the outstanding balance.  After taxpayer did not answer or appear, the government moved for default under Fed. R. Civ. P. 55(a).  After the clerk entered default, the government moved for a default judgment under Rule 55(b).   The district court denied the motion, and dismissed the complaint as untimely because the two-year limitations period began to run when taxpayer received the refund check.

As a matter of first impression in this circuit, the panel held that the two-year limitations period to sue to recover an erroneous refund starts on the date the erroneous refund check clears the Federal Reserve and payment to the taxpayer is authorized by the Treasury.  Because taxpayer's refund check cleared less than two years before the government sued, the panel held that the complaint was timely, and that the district court erred by dismissing it.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel also addressed other district court errors that independently warranted reversal. By sua sponte raising the statute of limitations defense and ordering the government to show cause why the complaint should not be dismissed, the district court improperly shifted the burden to the government to prove at the pleading stage that its claim against a party—who had not yet answered or appeared—was timely. The district court compounded this error by construing taxpayer's interrogatory responses, submitted during limited discovery, against the government and dismissing the complaint. The panel explained that, rather than finding that the government's claim was not time-barred on the face of the complaint, the district court looked beyond the face of the complaint and shifted the burden to the government to prove its claim was timely.

## COUNSEL

Isaac B. Rosenberg (argued), Bruce R. Ellisen, and Nathaniel S. Pollock, Attorneys, Tax Division/ Appellate Section; David A. Hubbert, Deputy Assistant Attorney General; Gary M. Restaino, Of Counsel, United States Attorney; United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

Jacob T. Spencer (argued), Gibson Dunn & Crutcher LLP, Washington, D.C.; Nicholas B. Venable, Ben Gibson, and J. Jacob Marsh, Gibson Dunn & Crutcher LLP, Denver, Colorado; for Defendant-Appellee.

**ORDER**

Footnote 3 on page 12 of the Slip Opinion filed on June 26, 2024 is amended to read as follows: "*See also Greene-Thapedi*, 398 F.3d at 639 (finding that *Carter* did not decide whether the check-clearance date is the proper date to start the limitations period and is "just another case in which the court was presented with a choice between the date of mailing and the date of receipt"). For the same reasons, our decision in *United States v. Fairbanks*, 95 F.2d 794 (9th Cir. 1938), *aff'd*, 306 U.S. 436 (1939), did not address the question we answer today. *Id.* at 795 (holding that the government's suit was timely when it sued "more than two years after the signing of the schedule [by the IRS Commissioner], but less than two years after the delivery of the refund check")."

With that amendment, Judge Gould and Judge Desai have voted to deny the petition for rehearing en banc, and Judge Hurwitz so recommends. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**. (Dkt. 69). No further petitions may be filed.

## OPINION

DESAI, Circuit Judge:

The United States sued Jeffrey Page under 26 U.S.C. § 7405 to recover an erroneous tax refund. After Page failed to answer or appear, the government moved for default judgment. The district court denied the motion and sua sponte dismissed the complaint based on the statute of limitations. On appeal, the government challenges the sua sponte dismissal and argues that its complaint was timely.

Central to this appeal is the following question: When did the statute of limitations for the government's claim begin to run? We hold that the two-year limitations period to sue to recover an erroneous refund under § 7405 starts on the date the erroneous refund check clears the Federal Reserve and payment to the taxpayer is authorized by the Treasury. Because Page's refund check cleared less than two years before the government sued, the complaint was timely, and the district court erred by dismissing it. We reverse and remand.

## Background

On May 5, 2017, the IRS mailed Page a $491,104.01 check for his 2016 tax refund. Page's refund should have been $3,463, but the IRS made a clerical error. About a year later, on April 5, 2018, Page cashed the check. After the government discovered the error, it sent letters over several months demanding that Page return the erroneous refund. Page eventually returned $210,000 but kept the remaining $277,641.01.

On March 31, 2020, the government sued Page under 26 U.S.C. § 7405 to recover the outstanding balance. Page did

not answer the complaint, and the government moved for default under Federal Rule of Civil Procedure 55(a). After the clerk entered default, the government moved for a default judgment under Rule 55(b). The district court denied the motion. It held that the statute of limitations on the government's claim began to run when Page received the refund check and, despite not knowing the date of receipt, suggested that the complaint was likely untimely. The district court thus ordered the government to show cause why the case "should not be dismissed with prejudice as barred by" the statute of limitations.

The government responded to the order to show cause, arguing that the check-clearance date—not the check-receipt date—triggered the statute of limitations, and the complaint was timely because Page cashed the check less than two years before the government sued.[1] The government alternatively asked for limited discovery in the event that the district court found that the check-receipt date triggered the statute of limitations. The district court granted limited discovery for the government to determine when Page received the refund check. The district court did not require Page to file a responsive pleading. In response to the government's interrogatories, Page stated that he "d[id] not recall" when he received the check.

The government supplemented its response to the order to show cause and attached Page's verified responses to the interrogatories. The government again argued that its

---

[1] The government appears to use "cashed" and "cleared" synonymously and alleges that Page cashed the check on April 5, 2018. But as the government acknowledges, "cashed" could mean deposited, and a check might not clear on the date it is deposited. Even so, a check cannot clear until it is deposited, so Page's check cleared on or after April 5, 2018.

complaint was timely because the check-clearance date triggered the statute of limitations. The government alternatively argued that, even if the check-receipt date started the statute of limitations, the court should not dismiss the complaint and should instead order Page to file an answer because the check-receipt date was still unknown.

The district court rejected the government's arguments and sua sponte dismissed the complaint. It again held that the check-receipt date triggered the statute of limitations. Despite acknowledging that the complaint did not allege (and Page "d[id] not know") the check-receipt date, the district court relied on "common sense" to hold that the complaint was untimely. The government appealed the dismissal.

## Standard and Scope of Review

Though the statute of limitations is an affirmative defense, a district court may sua sponte consider whether a complaint is barred by the statute of limitations. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (district courts may sua sponte "raise an affirmative defense [that] . . . has not been affirmatively waived"), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) (en banc).[2] We review de novo a district court's sua sponte dismissal of a complaint. *Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008). We may uphold a dismissal on statute

---

[2] This is true even when a defendant is in default. Although a defendant can forfeit a statute of limitations defense through default, *see In re Est. of Ferdinand E. Marcos Human Rights Litig.*, 978 F.2d 493, 495 n.2 (9th Cir. 1992), district courts may consider "the sufficiency of the complaint" when deciding a motion for default judgment, *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

of limitations grounds only if, accepting all well-pled facts in the complaint as true, "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995); *see also Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017).

## Discussion

The government may bring a claim under 26 U.S.C. § 7405(b) after a tax payment "has been erroneously refunded." Absent taxpayer fraud (which is not at issue here), a complaint to recover an erroneous refund under § 7405(b) must be filed "within 2 years after the making of such refund." 26 U.S.C. § 6532(b). Thus, to determine whether the government's complaint against Page is timely, we must decide when the erroneous refund was "made." The parties offer two competing definitions of when a refund is "made": the check-receipt date and the check-clearance date. We hold as a matter of first impression in this circuit that a refund is "made" under § 6532(b) when a refund check clears. We therefore hold that the government's complaint was timely on its face, and the district court erred by sua sponte dismissing it.

## I. The statute of limitations under § 6532(b) begins to run when an erroneous refund check clears.

We start our analysis with the longstanding principle that a refund is "made" when it is paid. *See United States v. Wurts*, 303 U.S. 414, 417–18 (1938). In *Wurts*, the Supreme Court considered whether the government's suit to recover an erroneous refund was timely under § 6532(b)'s identical precursor. *Id.* at 415–16. The parties disputed whether a refund was made when it was "allowed" or when it was "paid." *Id.* at 416. The Court noted that the "common

understanding" of refund is "repayment" or "to return money in restitution," and "only by ignoring the common understanding of words could 'making a refund' be considered synonymous with 'allowing a refund.'" *Id.* at 417 (cleaned up). And because the government "[o]bviously" has "no right to sue [a] taxpayer to recover money before money had been paid to him," the Court rejected the taxpayer's "construction . . . [that] would allow[] the statute of limitations to begin to run against recovery on an erroneous payment before any such payment is made." *Id.* at 418. The Court thus held that the statute of limitations "begins to run from the date of payment." *Id.*

The Court reaffirmed this principle in *O'Gilvie v. United States*, 519 U.S. 79 (1996). There, taxpayers argued that the limitations period under § 6532(b) began to run when the government mailed them a refund check. *Id.* at 91. The Court disagreed. *Id.* at 91–92. Relying on *Wurts*, common law principles, and the "Court's normal practice of construing ambiguous statutes of limitations in Government action in the Government's favor," *id.* at 92, the Court held that the statute of limitations begins to run "upon the receipt of payment," *id.* at 91 (cleaned up). Because the government sued within two years after the taxpayers received the refund check, the Court did not decide whether "payment" is made when a check is received or when a check clears. But it noted that "[t]he date the check clears . . . sets an outer bound." *Id.* at 92.

Though *Wurts* and *O'Gilvie* did not decide the precise question before us, they both made clear that *payment* triggers the statute of limitations under § 6532(b). Page posits that a refund is paid when the taxpayer receives the refund check. We disagree. The date the check clears is the more appropriate benchmark for defining when a refund is

paid or, put another way, the date the check clears is the date the refund is made.

First, payment cannot be made until the funds change hands. Even after a taxpayer receives a refund check, the government can cancel it. *Wurts*, 303 U.S. at 417–18 (noting that the government "might—even after a check was signed and mailed—cancel the payment" of an erroneous refund). Indeed, the Secretary of the Treasury "shall not be required to pay a Treasury check . . . unless it is negotiated to a financial institution within 12 months" after the check was issued, 31 U.S.C. § 3328(a)(1)(A); 31 C.F.R. § 240.5(a)(1), (b)(1), and may "decline payment of a Treasury check after first examination," 31 U.S.C. § 3328(f); *see also* 31 C.F.R. § 240.6(b). In other words, the Treasury has no obligation to pay the taxpayer until after the check is presented to the Federal Reserve Bank and the Secretary authorizes payment. "Until that moment, the Treasury has not parted with any funds, and the taxpayer has not 'received' any refund." *United States v. Commonwealth Energy Sys.*, 994 F. Supp. 80, 82 (D. Mass. 1998), *aff'd United States v. Commonwealth Energy Sys.*, 235 F.3d 11 (1st Cir. 2000).

This construction ensures that the statute of limitations does not begin to run before the government can sue. The government cannot sue a taxpayer under § 7405(b) until a tax "has been erroneously refunded." 26 U.S.C. § 7405(b). If Page had returned or shredded the erroneous refund check after he received it, or if the government had canceled the check before Page cashed it, could the government sue Page for nearly half a million dollars? Of course not. Nothing was "refunded" when Page merely received the check. *See Wurts*, 303 U.S. at 418; *see also Paulson v. United States*, 78 F.2d 97, 99 (10th Cir. 1935) ("Ordinarily a statute of

limitation does not begin to run until a suit could be brought. Certainly it cannot be contended that a suit of this nature may be maintained . . . before the money is paid to the taxpayer."). "While it is theoretically possible" for a claim to accrue at one time "for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit," we "will not infer such an odd result" absent statutory language saying so. *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). And such language must be "so clear as to leave room for no other reasonable construction." *Wurts*, 303 U.S. at 418. Here, nothing in the relevant statutory language suggests that Congress intended the statute of limitations to begin before the government can sue. To the contrary, the language confirms that the same event— payment of the erroneous refund—triggers both the start of the statute of limitations and the government's right to sue. *See* 26 U.S.C. § 6532(b) (explicitly tying "the making of *such refund*" to "an erroneous refund" the government seeks to recover "by suit under section 7405" (emphasis added)).

Second, the check-clearance date is the most certain date for determining when the statute of limitations starts. When the government sends an erroneous refund check, it cannot know when the taxpayer received it (here, even Page claims he does not know when he received it). But the date the check clears the Federal Reserve is a documented, ascertainable event. The Supreme Court recognized as much in *O'Gilvie*. While the Court did not address the precise date when "payment" is made, it held that a receipt-of-payment rule provides clarity because the check-clearance date "sets an outer bound." 519 U.S. at 92. Using that "outer bound" to trigger the statute of limitations gives the taxpayer and the government the most certainty when calculating when the government must sue. After all, the "Treasury cannot know

for certain when a check is received by a taxpayer," but "it can know when that check clears." *Commonwealth Energy Sys.*, 235 F.3d at 14. And the taxpayer will know with certainty that the government has two years to sue after the taxpayer cashes the check and receives the funds. This rule will also aid courts in adjudicating these disputes. "Factual disputes are more likely to arise when a court is asked to determine the date that a taxpayer received a refund check in the mail. By contrast, a court can determine with near certainty the date on which the Treasury authorized payment on the check." *United States v. Greene-Thapedi*, 398 F.3d 635, 639 (7th Cir. 2005). The check-clearance rule thus gives the parties and courts the most clarity when calculating the statute of limitations.

Third, we must strictly construe statutes of limitations in the government's favor. *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391–92 (1984); *see also O'Gilvie*, 519 U.S. at 92. Adopting a check-receipt rule here would "disadvantage[] the government" because it would "bar[] the action." *Greene-Thapedi*, 398 F.3d at 638 (citing *O'Gilvie*, 519 U.S. at 91). But even more, the check-clearance rule avoids creating perverse incentives that would disadvantage the government. If the statute of limitations started when a taxpayer receives a refund check, then the taxpayer could—as Page did here—hold an erroneous check for a year before cashing it and eat up half the limitations period before the government even discovers the erroneous payment. A taxpayer might hold a check in good faith before cashing it for many reasons, but he could also do so to gain a strategic advantage. Using the check-clearance date prevents such gamesmanship.

Fourth, we adopt a check-clearance rule "to avoid an unnecessary circuit split." *Glob. Linguist Sols., LLC v.*

*Abdelmeged*, 913 F.3d 921, 923 (9th Cir. 2019). Only two circuits have answered the question before us: whether the check-receipt date or the check-clearance date triggers the statute of limitations under § 6532(b). Both chose the check-clearance date. *Greene-Thapedi*, 398 F.3d at 639 ("This [check-clearance] rule permits both the government and the taxpayer to know exactly when the limitations period commences."); *Commonwealth Energy Sys.*, 235 F.3d at 14 ("Using the check-clearing date here both satisfies the rule that we construe statutes of limitations in favor of the Government and provides a certain limitations date by which the Government must abide."). We thus adopt a rule that aligns us with our sister circuits.

Finally, our decision in *United States v. Carter*, 906 F.2d 1375 (9th Cir. 1990), does not dictate a different result. Page and the district court relied on *Carter*'s statement that the limitations period begins when the taxpayer receives an erroneous refund check. *Id.* at 1377. But *Carter* did not consider the question we answer today. In *Carter*, we decided whether the government's claim was timely based only on two competing accrual dates: "the date the government *mailed* the erroneous refund check" or "the date [the taxpayer] *received* the check." *Id.* (emphasis added). We held that the statute of limitations was satisfied by the check-receipt date in that case, but we did not decide whether payment is "made" under § 6532(b) when the refund check is received or when it clears. Indeed, we did not need to address that question because the check-receipt date fell within the two-year limitations period. *See id.* at 1377–78. There was thus no reason to confront the issue presented here, because the parties did not raise it and the outcome would have been the same whether we used a check-receipt rule or a check-clearance rule. *See United States v. Kirilyuk*,

29 F.4th 1128, 1134 (9th Cir. 2022) (explaining that "cases are not precedential for propositions not considered," so "if a prior case does not raise or consider the implications of a legal argument, it does not constrain our analysis" (cleaned up)).[3] In contrast here, the timeliness of the complaint depends on whether payment is made when the check is received or when the check clears.

In sum, now squarely presented with the question of when an erroneous refund is "made" under § 6532(b), we hold that a refund is made when the check clears the Federal Reserve.

## II. The government's complaint was timely.

Because we hold that the two-year statute of limitations started when the check cleared, the government's complaint was timely on its face. The complaint alleges that Page cashed the erroneous refund check on April 5, 2018, meaning the check cleared on or after that date. The government filed its complaint less than two years later, on March 31, 2020. The complaint was therefore timely and should not have been dismissed.

Beyond that, no matter which date (check-clearance or check-cashing) started the limitations period, the district

---

[3] *See also Greene-Thapedi*, 398 F.3d at 639 (finding that *Carter* did not decide whether the check-clearance date is the proper date to start the limitations period and is "just another case in which the court was presented with a choice between the date of mailing and the date of receipt"). For the same reasons, our decision in *United States v. Fairbanks*, 95 F.2d 794 (9th Cir. 1938), *aff'd*, 306 U.S. 436 (1939), did not address the question we answer today. *Id.* at 795 (holding that the government's suit was timely when it sued "more than two years after the signing of the schedule [by the IRS Commissioner], but less than two years after the delivery of the refund check").

court made other errors that independently warrant reversal. Plaintiffs are not required to "plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). And courts may dismiss a complaint on statute of limitations grounds "only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).

The complaint alleged that the government mailed Page the check on May 5, 2017, and that Page cashed it on April 5, 2018. Even if the check-receipt date started the statute of limitations, the complaint did not allege the check receipt-date and thus did not reveal a statute of limitations defect. Yet even after acknowledging that the complaint did not allege the check-receipt date, the district court sua sponte raised a statute of limitations defense and ordered the government to show cause why the complaint should not be dismissed. In doing so, the district court improperly shifted the burden to the government to prove at the pleading stage that its claim against Page—who had not yet answered or appeared—was timely.

The district court compounded this error by construing Page's interrogatory responses against the government and dismissing the complaint. When asked in interrogatories when he received the check, Page responded: "I do not recall the date I received the check," and "I do not have any records." Rather than finding that the government's claim was not time-barred on the face of the complaint, the district court relied on Page's interrogatory responses. It held that the government failed to show its complaint was timely because the court could not "deem [Page's] response as an

admission that he received the check on a particular date." But it was not the government's burden to plead the "particular date" that the check was received. In short, the district court erred by looking beyond the face of the complaint and shifting the burden to the government to prove its claim was timely.

## Conclusion

We reverse the district court's dismissal of the complaint on statute of limitations grounds and remand for further proceedings consistent with this opinion.[4]

**REVERSED and REMANDED.**

---

[4] The district court should consider on remand whether the government is entitled to default judgment.