United States Court of Appeals,

Fifth Circuit.

No. 94-60198.

Ray L. WESSON, Estate of Ray Wesson, Deceased, E. Hall, Administrator, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

March 30, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, DEMOSS and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The sole issue before this Court is whether punitive damages awarded in a bad faith cause of action under Mississippi law is excludable under 26 U.S.C. § 104(a)(2).[1] We are not the first circuit to address this issue. The Ninth, Federal, and Fourth Circuits have held that punitive damages do not fall within the purview of § 104(a)(2).[2] The Sixth Circuit, departing from this

---

[1]In 1989 Congress amended section 104(a), providing: "paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical sickness or physical injury." The parties agree that under the amended version of § 104(a)(2), the punitive damages in the case *sub judice* would be taxable. However, the amendment only applies to amounts received after July 10, 1989, in taxable years ending after such date. A verdict was returned well before this date.

[2]*Hawkins v. United States,* 30 F.3d 1077 (9th Cir.1994), *petition for cert. filed,* 63 USLW 3487 (Dec. 9, 1994); *Reese v. United States,* 24 F.3d 228 (Fed.Cir.1994); *Commissioner of Internal Revenue v. Miller,* 914 F.2d 586 (4th Cir.1990).

1

majority position, held that punitive damages are excludable.[3] For the reasons discussed below, we join our brethren of the Ninth, Federal, and Fourth Circuits in holding that noncompensatory punitive damages are not excludable under § 104(a)(2).

## Background

Dr. Ray Lamar Wesson and another doctor owned and operated a surgical clinic. The clinic purchased a life insurance policy on Dr. Wesson in the amount of $87,136.00. The Policy provided a feature called an "Automatic Premium Loan." This feature guarded against lapse of the Policy by borrowing against the value of the Policy to satisfy any unpaid premium. Mutual Life Insurance Company of New York (MONY) did not set up the Policy with the automatic premium loan feature because of a mistaken belief that another provision in the Policy negated this feature. MONY later became aware that the automatic loan feature should be operative notwithstanding any other provision, yet failed to activate it.

A premium on the Wesson Policy was not paid. Roughly one and one-half months later Dr. Wesson died in a plane crash and MONY refused to tender the face amount of the policy. The children, as beneficiaries under the Policy, brought suit against MONY in Mississippi state court to recover the face value of the Policy and punitive damages for bad faith. The jury returned a verdict of $87,136.00 in actual damages and 8 million in punitive damages.

---

[3]*Horton v. Commissioner of Internal Revenue,* 33 F.3d 625 (6th Cir.1994).

The punitive damage award was remitted to 1.5 million.[4]

The decedent's estate received the proceeds of the punitive damage award and included it on its 1988 federal income tax return. In July 1990 the estate filed an amended return claiming a refund in the amount of $300,465.00 under the theory that the punitive damages were excludable under 26 U.S.C. § 104(a)(2). The IRS rejected the refund claim in April 1992. In February 1993 the estate filed this complaint in district court. Motions for summary judgment were filed and the district court granted the government's motion. The district court issued a memorandum opinion, which relied on the Fourth Circuit rationale of *Commissioner of Internal Revenue v. Miller* for including punitive damages in taxable income. This appeal ensued.

## Discussion

We review a district court's decision to grant summary judgment *de novo.* Both the district court and the parties agree that there are no genuine issues of material fact, therefore summary judgment was appropriate. The sole issue is whether punitive damages received in a bad-faith action should be excludable from taxable gross income under 26 U.S.C. § 104(a)(2) (1988).

To resolve this issue, we first look to the language of the statute. Section 104, entitled "Compensation for injuries or sickness", provides in relevant part that "gross income does not

---

[4]*Mutual Life Insurance Co. of New York v. Estate of Wesson,* 517 So.2d 521 (Miss.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988).

3

include ... the amount of any damages received ... on account of personal injuries or sickness."[5] Appellant contends that the punitive damages awarded by the jury were damages received on account of personal injuries. The government contends that punitive damages do not fall within the ambit of section 104(a)(2) and are therefore taxable. As the Ninth, Federal, and Fourth

---

[5]§ 104. Compensation for injuries or sickness

(a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under 213 (relating to medical, etc., expenses) for any prior taxable year, *gross income does not include—*

(1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness;

(2) *the amount of any damages received* (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries or sickness;*

(3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includable in the gross income of the employee, or (B) are paid by the employer);

(4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 808 of the Foreign Service Act of 1980; and

(5) amounts received by an individual as disability income attributable to injuries incurred as a direct result of a violent attack which the Secretary of State determines to be a terrorist attack and which occurred while such individual was an employee of the United States engaged in the performance of his official duties outside the United States. (emphasis added).

Circuits have noted, section 104(a)(2) is ambiguous[6], susceptible of at least two conflicting interpretations.[7]  We agree.  Section 104(a)(2) could mean that all damages recovered in a personal injury suit are excluded, or it could mean that only those damages that purport to compensate the plaintiff for the personal injury suffered are received on account of personal injury—"consensus on this issue within the federal judiciary is nonexistent."[8]  The ambiguity is not limited to the term "on account of."  Congress also failed to explain the meaning of "personal injury."

The Supreme Court shed some light on the latter.  In *United States v. Burke*[9] the Court defined the meaning of "personal injury" as used in section 104(a)(2).  The plaintiff filed a Title VII action in district court alleging that the defendant discriminated

---

[6]*See Hawkins,* 30 F.3d at 1080;  *Reese,* 24 F.3d at 230; *Miller,* 914 F.2d at 590.

[7]In *Reese,* the appellant interpreted the language "on account of" to describe "a causal relationship between damages and injury according to which damages are received on account of a personal injury whenever a showing of personal injury is a legal prerequisite for the award of those damages."  *Reese,* 24 F.3d at 230.  Put simply, any damages received in a case involving personal injuries are necessarily damages received on account of personal injuries.  On the other hand, the IRS urged a tighter interpretation, "one which defines a causal relationship according to which damages are received on account of personal injuries only when the injury in and of itself justifies such damages."  *Id.* at 230-31.  Noncompensatory punitive damages are not excluded under § 104(a)(2) because they are received, not on account of a personal injury, but on account of the defendant's egregious conduct in an attempt to punish and deter.  "Both interpretations are plausible."  *Id.* at 231.

[8]*Estate of Wesson v. United States,* 843 F.Supp. 1119, 1121 (S.D.Miss.1994).

[9]504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).

unlawfully in the payment of salaries on the basis of sex. After the district court denied cross-motions for summary judgment, the parties settled. The taxpayers paid taxes on the settlement payments and subsequently sought a refund under § 104(a)(2) as "damages received on account of personal injuries or sickness." Recognizing that neither the text nor the legislative history of § 104(a)(2) offered an explanation of the meaning of personal injury, the Court linked identification of a personal injury to traditional tort principles relying on 26 C.F.R. § 1.104-1(c), which defines "damages" as "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights." In determining whether an action is based upon a tort or upon tort type rights, the Court examined the remedies available to the plaintiff. Under traditional tort law, a broad range of remedies are available, such as "pain and suffering, emotional distress, harm to reputation ... [and] punitive damages."[10] Relying on the lack of remedies available to the plaintiff, the Court held that a Title VII claim does not seek to redress a personal injury. Unfortunately, the *Burke* Court did not address what type of damages are excludable from gross income, as received "on account of" a personal injury.

Under *Burke* the threshold inquiry in determining whether a damage award is excludable from gross income pursuant to § 104(a)(2) is to determine if the underlying cause of action seeks

---

[10]*Burke*, 504 U.S. at ----, 112 S.Ct. at 1873, 119 L.Ed.2d at 46 (internal citation omitted).

to redress a personal injury.[11] This inquiry requires consideration of Mississippi law.[12] The government contends that a cause of action sounding in bad faith is not one redressing a personal injury. The Mississippi Supreme Court, in the very case that gave rise to the damage award, characterized the cause of action as a bad faith claim with *no personal injuries* or actual damages other than the policy limits.[13] Though this language is curious, we do not agree with the Government's position on this issue. After reviewing Mississippi law, we conclude that a bad faith cause of action is one sounding in tort, and accordingly, one redressing a personal injury. The *Wesson* court stated that punitive damages are not allowed absent such malicious, reckless, willful or gross disregard for the rights of the insured as to constitute an independent tort.[14] This language is consistent with a *Burke*-type personal injury. This does not, however, end our inquiry. As noted above, establishing that the underlying cause of action redresses a personal injury is a *threshold inquiry.*

The second step is to determine whether the damages were

---

[11]*See Miller,* 914 F.2d at 589.

[12]*See id.* (stating that "the inquiry requires consideration of the Maryland law that created Miller's entitlement to relief").

[13]*Estate of Wesson,* 517 So.2d at 533.

[14]*Id.* at 528; *see also Aetna Casualty & Surety Co. v. Day,* 487 So.2d 830, 832 (Miss.1986); *Weems v. American Security Ins. Co.,* 486 So.2d 1222, 1226 (Miss.1986); *Bankers Life & Casualty Co. v. Crenshaw,* 483 So.2d 254, 268-69 (Miss.1985), *aff'd,* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803, 808 (Miss.1984); *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239, 247 (Miss.1977).

received on account of the personal injury.[15]  Because the language "on account of" of § 104(a)(2) is ambiguous we must " "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.' "[16]  "The definition of gross income under the Internal Revenue Code sweeps broadly."[17]  Section 61(a) defines gross income as "all income from whatever source derived," subject only to the exclusions specifically enumerated elsewhere in the Code.[18]  "The Supreme Court has long held that this definition is to be given liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted.' "[19]  Accessions to wealth are generally presumed to be gross income unless the taxpayer can show that the accession falls within a specific

---

[15]*See Schmitz v. Commission of Internal Revenue,* 34 F.3d 790, 792 (9th Cir.1994) (citing *Hawkins* as setting forth a two-part test, requiring the taxpayer to show (1) that the underlying cause of action was tort-like under *Burke,* and (2) that the damages were received "on account of" the taxpayer's personal injury), *petition for cert. filed,* 63 USLW 3462 (Nov. 23, 1994).

[16]*Reese,* 24 F.3d at 231 (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990)).

[17]*Burke,* 504 U.S. ----, 112 S.Ct. at 1870, 119 L.Ed.2d at 42.

[18]26 U.S.C. § 61(a).

[19]*Taggi v. United States,* 35 F.3d 93, 95 (2d Cir.1994) (quoting *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955)).  *See also Burke,* 504 U.S. at ----, 112 S.Ct. at 1870, 119 L.Ed.2d at 42 (stating that Congress intended to exert "the full measure of its taxing power" by including within the definition of gross income *any* accession to wealth).

exclusion.[20]  Exclusions from income are construed narrowly.[21]

The Supreme Court has recognized that the title or heading of a statute or section can aid in resolving an ambiguity in the text.[22]  Section 104 is found in Part III of Subchapter B of the Code, entitled "Items Specifically Excluded from Gross Income." Section 104 is titled "Compensation for injuries or sickness."  As the *Reese* court noted, "[c]ompensatory damages are commonly understood to mean damages such as will compensate the injured party for the injury sustained, and nothing more;  such as will simply make good or replace the loss caused by the wrong or injury."[23]   The common meaning of "compensatory damages" is consistent with the underlying purpose of the section as recognized by the Ninth Circuit.  " "Damages paid for personal injuries are excluded from gross income *because they make the taxpayer whole from a previous loss of personal rights—because, in effect, they restore a loss to capital.*' "[24]  We agree with the *Reese* court that

---

[20]*Reese,* 24 F.3d at 231.

[21]*United States v. Centennial Sav. Bank FSB,* 499 U.S. 573, 583, 111 S.Ct. 1512, 1519, 113 L.Ed.2d 608 (1991).

[22]*Immigration and Naturalization Serv. v. National Ctr. for Immigrants,* 502 U.S. 183, 189-90, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1992).

[23]*Reese,* 24 F.3d at 231 (internal quotations omitted) (citing Black's Law Dictionary 390 (6th ed. 1990)).

[24]*Hawkins,* 30 F.3d at 1083 (emphasis added) (citing *Starrels v. Commissioner,* 304 F.2d 574, 576 (9th Cir.1962));  *see* 1 B. Blitker, *Federal Taxation of Income, Estates and Gifts,* ¶ 13.1.4 (1981) (recognizing that "[t]he rationale for [§ 104(a)(2) ] ... is presumably that the recovery does not generate a gain or profit but only makes the taxpayer whole by compensating for a loss");  *accord Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426,

9

section 104's enumerated exclusions, which encompass only the replacement of losses resulting from injury or sickness, are also consistent with this common meaning and further aid us in resolving this ambiguity. Section 104(a)(1) excludes from income amounts received under workmen's compensation acts; section 104(a)(3) excludes amounts received through accident or health insurance; section 104(a)(4) excludes amounts received as pension, annuity, or a similar allowance; and section 104(a)(5) excludes amounts received as disability income. When one looks at section 104 in its entirety, it becomes apparent that the class of damages that may be excluded are those that *compensate* an individual for some loss. Viewing section 104(a)(2) in its statutory context, against the doctrine that all accessions to wealth are gross income unless specifically excluded, and applying the principle that exclusions should be construed narrowly, we join our brethren of the Ninth, Federal, and Fourth Circuits in concluding that "Congress did not intend section 104(a)(2) to exclude from gross income noncompensatory damages such as punitive damages."[25]

Now we must determine if the damages awarded to plaintiff were "on account of" a personal injury, that is, awarded to compensate a tort-like injury. Again this requires reference to

---

432, 75 S.Ct. 473, 477-78, 99 L.Ed. 483 (1955) (stating in another context, that "[p]unitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes").

[25]*Id.* The legislative history of Section 104(a)(2) also supports this conclusion. *See id.* at 232-33 (tracing § 104(a)(2)'s legislative history and concluding that punitive damages are not excludable from gross income).

Mississippi law.  Unquestionably, the law of Mississippi is similar to that of other states;  punitive damages are not awarded to compensate a plaintiff for an injury.  "The purpose of punitive damages, as often stated by this Court, is to punish a tortfeasor."[26]  "They "are not awarded to compensate a party for an injury, but are granted in the nature of punishment for the wrongdoing of the defendant as an example so that others may be deterred from the commission of similar offenses, thereby, in theory, protecting the public.' "[27]  Mississippi's bad faith law is in accord with its general law on punitive damages.  In *Standard Life Ins. Co. of Indiana v. Veal*[28] an insured brought an action against the insurer alleging breach of contract for the insurer's failure to pay the face value of a life insurance policy.  The court affirmed an award of punitive damages, stating:

> [e]xemplary or punitive damages are those, of course, which are in addition to the actual or compensatory settlement. They are granted in the nature of punishment for the wrong doing of the defendant and as an example so that others may be

---

[26]*State Farm Mut. Auto. Ins. Co. v. Daughdrill,* 474 So.2d 1048, 1052 (Miss.1985) (responding to a certified question by the Fifth Circuit concerning the Uninsured Motorist Act).

[27]*Id.* (quoting *Mississippi Power Co. v. Jones,* 369 So.2d 1381, 1387 (Miss.1979));  *see also James W. Sessums Timber Co., Inc. v. McDaniel,* 635 So.2d 875, 880 (Miss.1994) (stating that "[a] primary purpose in imposing punitive damages is to punish ... and serve as a warning to such person and others not to engage in similar [egregious] conduct in the future");  *Snow Lake Shores Property Owners Corp. v. Smith,* 610 So.2d 357, 362 (Miss.1992) (stating "punitive damages are assessed as an example and warning to others");  *U.S. Fidelity & Guaranty Co. v. Stringfellow,* 254 Miss. 812, 182 So.2d 919, 922 (1966) (stating "punitive damages ... are in addition to actual or compensatory damages").

[28]354 So.2d 239 (Miss.1977).

11

deterred from the commission of similar offenses thereby in theory protecting the public. The basis in awarding such damages to the injured party is that of rewarding an individual for public service in bringing the wrongdoer to account.[29]

The punitive damage award in this case may be aptly characterized as a windfall; other courts have made similar characterizations.[30] In this context we agree with the Ninth Circuit's observation that punitive damages do not make the recovering party whole and that such damages are a windfall and an accession to wealth.[31] In accordance with Mississippi law, we conclude that punitive damages awarded for bad faith are not awarded to compensate the plaintiff, and are therefore not awarded on account of personal injuries.

---

[29]*Id.* at 247 (internal citation omitted). The *Veal* court is not alone in holding that punitive damages in insurance bad faith cases are awarded, not to compensate, but to deter and punish. In *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1189 (Miss.1990), the court stated that "[t]he possibility of being held liable for punitive damages acts primarily to punish and deter." Punitive damages "also act[ ] to award plaintiff for public service in bringing the wrongdoer to account ... providing an incentive to litigate injustices that might otherwise go unredressed." *Id.* at 1189-90. *See also Bankers Life & Casualty Co. v. Crenshaw,* 483 So.2d 254, 278 (Miss.1985) ("Our law ... authorize[s] a quantum of punitive damages to be that amount reasonably necessary to punish defendant and to provide a substantial deterrent to it and others similarly situated from the commission of similar offenses...."), *aff'd,* 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803, 808 & 812 (Miss.1983) (stating that punitive damages are "assessed as an example and warning to others ... in order to inflict punishment"); *Consolidated American Life Ins. Co. v. Toche,* 410 So.2d 1303, 1304 (Miss.1982) ("We have attempted to make it clear that since punitive damages are assessed as an example and warning to others, they should be allowed only with caution and within narrow limits.").

[30]*See Estate of Wesson v. United States,* 843 F.Supp. 1119, 1122 (S.D.Miss.1994); *see, e.g. Miller,* 914 F.2d at 589.

[31]*Hawkins,* 30 F.3d at 1083-84.

Appellant contends that punitive damages serve a dual purpose in Mississippi: (1) to punish and deter the tortfeasor, and (2) to reward or compensate the plaintiff for the service to the public in bringing the action. In *Mutual Life Insurance Co. of New York v. Estate of Wesson,* the Mississippi Supreme Court stated, "[i]n addition, the punitive damage award amounts to a measure of compensation to the plaintiff for service to the public in bringing the action, which should act as a deterrent of similar acts of wrongdoing to other members of the public."[32] Appellant contends that the district court erred in finding no element of recompense in the punitive damage award. Appellant's argument is unsupported by the overwhelming case law of Mississippi. The Mississippi Supreme Court's use of the term "compensation" in the *Wesson* case while superficially seems to support Appellant's position, has not changed the law of Mississippi. In *Veal,* the same court stated that the "basis in awarding ... [a punitive damage award] to the injured party is that of *rewarding* an individual for public service in bringing the wrongdoer to account";[33] in *Andrew Jackson,* the court stated that punitive damages "act[ ] to *award* plaintiff for public service in bring the wrongdoer to account";[34] and in *U.S. Fidelity & Guaranty,* the court stated that punitive damages "are in

[32]517 So.2d 521, 532 (Miss.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988).

[33]*Veal,* 354 So.2d at 247 (internal citations omitted) (emphasis added).

[34]*Andrew Jackson,* 566 So.2d at 1189-90 (emphasis added).

additional to ... compensatory damages."[35] Punitive damages are not awarded to compensate the plaintiff for the personal injury suffered, they act to reward the plaintiff for bringing the tortfeasor to justice.

In 1989 Congress amended § 104(a)(2), adding the following provision: "paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical sickness or physical injury." Appellant asserts that Congress's decision to amend the exclusion implies that punitive damages were not taxable before this amendment, otherwise there would be no reason to narrow the scope of the exclusion. The Ninth Circuit recently rejected this very argument. As discussed in *Hawkins,* "Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases."[36] In fact, at the time Congress acted, the tax court in *Miller* had held recently that punitive damages were excludable.[37] The more plausible interpretation of the amendment is that the *Miller* case was wrongly decided and Congress acted to correct it. Moreover, an amendment to a statute does not necessarily indicate that the previous version was the opposite of the amended version. As the Supreme Court recognized, "the views of a subsequent Congress form

---

[35]*U.S. Fidelity & Guaranty,* 182 So.2d at 922.

[36]*Hawkins,* 30 F.3d at 1082.

[37]*Miller v. Commissioner,* 93 T.C. 330, 1989 WL 104238 (1989), *rev'd, Commissioner v. Miller,* 914 F.2d 586 (4th Cir.1990).

14

a hazardous basis for inferring the intent of an earlier one."[38] Accordingly, we find Appellant's interpretation of the amendment unpersuasive.

In a post-brief submission Appellant directed our attention to the recently decided Sixth Circuit case of *Horton v. Commissioner of Internal Revenue,*[39] which held that punitive damages were excludable from gross income under § 104(a)(2). *Horton* departed from the circuit majority and held that in order "to determine whether an award is excludable under section 104(a)(2), we should focus on the nature of the claim underlying the taxpayer's damage award. This is the beginning and end of the inquiry."[40] The *Horton* court extended the reasoning of the Supreme Court decision of *Burke.* As discussed *supra,* the *Burke* Court focused on the nature of the claim to determine if it redressed a personal injury under § 104(a)(2). However, the taxpayer in *Burke* did not receive punitive damages, nor did the Court address the excludability of these damages.

> The Court mentioned punitive damages only because the Court felt that the availability of punitive damages indicates the nature of the underlying cause of action: Since punitive damages are traditionally available only in personal injury-type actions, the availability of punitives suggest that the underlying cause of action is "tort-like" within the meaning of § 104(a).[41]

---

[38]*United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960).

[39]33 F.3d 625 (6th Cir.1994).

[40]*Id.* at 631 (internal quotations omitted) (internal citation omitted).

[41]*Hawkins,* 30 F.3d at 1081.

15

Noncompensatory punitive damages are an indicia of a tort-like cause of action; however, it does not follow that they are awarded on account of a personal injury.[42] Notwithstanding our disagreement with the legal reasoning in *Horton,* we feel that *Horton* is distinguishable. Punitive damages in Kentucky serve, in part, a compensatory function.

> There is a reason for paying the punitive damages awarded to the injured party. It is because the *injury* has been *increased* by the *manner* [in which] it was inflicted ... [al]though punitive damages are awarded as a civil punishment upon the wrongdoer, rather than as an indemnity to the injured party .. it might with much propriety be said that they are allowed by way of remuneration for the aggravated wrong done.[43]

Therefore, in *Horton* the Sixth Circuit was faced with an issue not before us—whether a damage award that serves both as a deterrent and a compensatory purpose is excludable under § 104(a)(2).

To exclude damages awarded in a suit or otherwise under § 104(a)(2), two requirements must be met. The taxpayer must show: first, that the underlying cause of action was tort-like under *Burke;* and second, that the damages were received on account of the personal injury, that is, to compensate the injured party for the personal injury. Accordingly, we affirm the district court's ruling, joining the Ninth, Federal, and Fourth Circuits in holding

---

[42]*Accord Miller,* 914 F.2d at 590 (stating that "the fact that personal injury is a prerequisite to punitive damages does *not* lead to the conclusion that the punitive damages were on account of the plaintiff's injuries because, even if the other elements of the tort are present, personal injury alone does not sustain a punitive damage award").

[43]*Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 390 (Ky.1985) (internal citation omitted) (internal quotation omitted).

that § 104(a)(2) does not exclude noncompensatory punitive damages from gross income.

AFFIRMED.