66 F.3d 1550
 76 A.F.T.R.2d 95-6752, 95-2 USTC P 50,508
 Kelly M. O'GILVIE, Plaintiff-Appellant/Cross-Appellee,
v.
UNITED STATES of America, Defendant-Appellee/Cross-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Kevin M. O'GILVIE, Stephanie L. O'Gilvie, Defendants-Appellees.
 Nos. 94-3004, 94-3031 and 94-3058.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 19, 1995.
 
 Kenneth W. Rosenberg, Tax Division (Loretta C. Argrett, Assistant Attorney General, and Kenneth L. Greene, Tax Division, of counsel: Randall K. Rathbun, United States Attorney, with him on the briefs), Department of Justice, Washington, DC, for U.S.
 Linda D. King of Wilkinson & King, Wichita, KS, for O'Gilvies.
 Before MOORE and LOGAN, Circuit Judges, and DAUGHERTY, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 The substantive issue raised in these consolidated appeals is whether punitive damages recovered in a case involving physical injury are excluded from gross income under Sec. 104(a)(2) of the Internal Revenue Code (I.R.C.), 26 U.S.C. Sec. 104(a)(2), a question which has split the circuits four to one.[1] We must also decide three threshold questions relating to our appellate jurisdiction.
 
 
 2
 * The punitive damages that are the subject of these appeals were awarded in a products liability action filed after Betty O'Gilvie died of toxic shock syndrome. Her widower, Kelly M. O'Gilvie, acting as administrator of her estate and as guardian of their minor children, Kevin M. O'Gilvie and Stephanie L. O'Gilvie, brought suit against International Playtex, Inc., which manufactured the tampons used by Betty O'Gilvie. The jury awarded actual damages of $1,525,000 and punitive damages of $10,000,000. See O'Gilvie v. International Playtex, Inc., 609 F.Supp. 817, 818 (D.Kan.1985), aff'd in part and rev'd in part, 821 F.2d 1438 (10th Cir.1987), cert. denied, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). The district court ordered a remittitur of the punitive award to $1,350,000, 609 F.Supp. at 819-20, but on appeal this court ordered reinstatement of the full punitive award, 821 F.2d at 1448-49.
 
 
 3
 In 1988, the O'Gilvie estate distributed the net proceeds of the punitive damages award to the beneficiaries, the taxpayers here. After attorney's fees and expenses the net proceeds were $4,967,292. Each of the three taxpayers reported their share of the punitive damages on their individual federal income tax returns for the 1988 tax year in the following amounts:
 
 
 4
 Kelly M. O'Gilvie $2,483,646
 Kevin M. O'Gilvie $1,241,823
 Stephanie L. O'Gilvie $1,241,823
 
 
 5
 In August 1989, taxpayer Kelly M. O'Gilvie filed a claim for refund with respect to his 1988 income taxes, asserting that punitive damages were excluded from gross income under I.R.C. Sec. 104(a)(2) as damages received "on account of personal injury."[2] When the Internal Revenue Service took no action on his refund claim he filed suit against the United States to recover the refund plus interest. He later filed an amended complaint in his suit, adding a claim for the refund of taxes paid on interest on the portion of the punitive damages award that was the subject of the remittitur.[3] The parties filed cross-motions for summary judgment, each asserting there was no genuine issue of material fact and that the taxability of punitive damages could be decided as a matter of law.
 
 
 6
 In November 1989, taxpayers Kevin M. O'Gilvie and Stephanie L. O'Gilvie filed claims for refunds asserting the punitives were excludable from income.[4] The IRS approved, and after submitting them to Congress as required for large refunds by I.R.C. Sec. 6405, processed the refunds. Kevin and Stephanie received refund checks in July 1990. Two years later, however, the IRS filed an action against each of them for recovery of an erroneous refund under I.R.C. Sec. 7405, asserting the punitive damages award was taxable. The parties in that case agreed to be bound by the decision in Kelly O'Gilvie's refund suit.
 
 
 7
 On May 26, 1992, the district court issued a memorandum and order in the refund suit, finding that the punitive damages were taxable. Kelly O'Gilvie moved for reconsideration of the district court's opinion, and on August 26, 1992, the district court reversed itself and entered a judgment holding that punitive damages were excludable from gross income under Sec. 104(a)(2). On October 26, 1992, the United States filed a notice of appeal to our court from the August 26 judgment.
 
 
 8
 On November 11, Kelly O'Gilvie filed a motion for summary judgment asserting that the interest on the portion of the punitive damages award that was the subject of the remittitur was excludable from income under Sec. 104(a)(2) as a matter of law. The United States opposed that motion, arguing that the interest was taxable and requesting summary judgment in its favor. Because of the remaining issue concerning taxability of the interest, on October 27, 1992, the district court entered an order withdrawing the August 26 judgment.[5] On November 30, 1993, the district court issued a memorandum and order finding that the interest during the interim period was taxable, and granted the government summary judgment on that issue. On December 7, 1993, the district court entered an amended order stating:
 
 
 9
 IT IS ORDERED AND ADJUDGED that pursuant to the Memorandum and Order filed and docketed on the 26th day of August, 1992, the motion for reconsideration filed by the plaintiff is granted and his motion for summary judgment is also granted; IT IS FURTHER ORDERED that pursuant to the Memorandum and Order filed and docketed on the 30th day of November, 1993, the motion for summary judgment filed by the defendant is granted and the Court holds that the "additional Amount" on $8.65 million from the date of the district court's entry of remittitur to the district court's entry of judgment in accordance with the Tenth Circuit's mandate was interest and is taxable as income.
 
 
 10
 U.S.App. 57.
 
 
 11
 On January 5, 1994, Kelly O'Gilvie filed a timely notice of appeal (No. 94-3004). On February 1, 1994, the government filed its cross-appeal (No. 94-3031).[6]
 
 II
 
 12
 Taxpayer Kelly O'Gilvie argues that we do not have subject matter jurisdiction over the government's cross-appeal in No. 94-3031 because the notice of appeal was not timely. Taxpayers Kevin and Stephanie O'Gilvie assert that we lack jurisdiction over the government's appeal in No. 94-3058 because the government's suit against them for erroneous refund was untimely and because federal courts do not have jurisdiction to review refunds that have been approved by the Joint Committee on Taxation under I.R.C. Sec. 6405. We address these issues in turn.
 
 
 13
 * When the United States is a party in a civil case, "the notice of appeal may be filed by any party within 60 days" after the date of entry of the judgment or order appealed from. Fed.R.App.P. 4(a)(1). The United States filed its notice of appeal more than sixty days after the district court entered its judgment of November 30, 1993, but less than sixty days after entry of the amended judgment of December 7, 1983. Thus, if the November 30 judgment was final and appealable the government's appeal was not timely; on the other hand, if the amended judgment of December 7 was the final and appealable order the government's appeal was timely.
 
 
 14
 Taxpayer Kelly O'Gilvie asserts that the amended judgment of December 7 merely corrected a clerical error in the first judgment under Fed.R.Civ.P. 60(a), and thus the time to appeal ran from November 30, 1993. See White v. Westrick, 921 F.2d 784 (8th Cir.1990). However, a careful reading of all of the memoranda, orders, and "judgments" entered in this case indicates that the October 27 order withdrew the August 26 judgment on the punitives issue. Thus the district court did not enter judgment on the punitive damages issue until December 7. The government's cross-appeal is timely.
 
 B
 
 15
 Taxpayers Kevin O'Gilvie and Stephanie O'Gilvie argue that the government's complaint seeking recovery of refunds made to them was time-barred. "Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund." I.R.C. Sec. 6532(b). The complaint filed on July 9, 1992, alleged that the IRS refunded the taxes at issue on July 9, 1990. Taxpayers admit that they received the refund checks in the mail on July 9, 1990, but argue that a refund is made for purposes of Sec. 6532(b) when the check is mailed, rather than when it is received. Taxpayers assert that because the checks had to have been mailed before July 9, 1990, the suit was filed more than two years after the refund was made. The question thus is whether a refund is "made" under Sec. 6532(b) when the check is mailed or when it is received.
 
 
 16
 Taxpayers cite United States v. Steel Furniture Co., 74 F.2d 744 (6th Cir.1935), for their assertion that Sec. 6532(b) must be construed liberally in their favor. That case, however, construed the scope of the predecessor of Sec. 7405, which was not a statute of limitations provision. In interpreting the predecessor to the statutory limitations provision in Sec. 6532(b) the Supreme Court stated that "[t]he Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier." United States v. Wurts, 303 U.S. 414, 416, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). Further, generally statutes of limitations sought to be applied against the government are strictly construed in favor of the government. See, e.g., Badaracco v. Commissioner, 464 U.S. 386, 391, 104 S.Ct. 756, 760-61, 78 L.Ed.2d 549 (1984).
 
 
 17
 Although we have not addressed the precise question whether a refund is "made" under the current Sec. 6532(b) when the check is mailed or when it is received, in Paulson v. United States, 78 F.2d 97 (10th Cir.1935), we held that the date a refund was made for purposes of the predecessor of Sec. 6532(b) was the date of receipt rather than the date the Commissioner approved and signed the schedule of refunds. As we stated there,
 
 
 18
 [T]he refund is made when the money is paid. Refund means to pay back, return, restore, make restitution. That is the ordinary and popular concept of the word, and in the absence of a contrary indication, it must be presumed that the Congress used it in that generally accepted sense. The return, restoration, and restitution of the money is made when the check in payment of the obligation is delivered.
 
 
 19
 Paulson, 78 F.2d at 99. Our Paulson decision is supported by Wurts, which stated that "[t]he Commissioner's signature on a schedule of overassessments does not finally establish a claimant's right to a refund ... [because he could later]--even after a check was signed and mailed--cancel the payment." 303 U.S. at 417-18, 58 S.Ct. at 639.
 
 
 20
 Taxpayers assert that if the date of mailing is in evidence, as it impliedly is here, that as between the date of mailing and the date of receipt, the date of mailing is the time from which the statute runs. But as we stated in Paulson, "[o]rdinarily a statute of limitation does not begin to run until a suit could be brought." 78 F.2d at 99. Here, the government could not have brought suit to recover the refund until the taxpayers had received the refund checks on July 9, 1990. Thus, the statute of limitations began to run on July 9, 1990, when taxpayers received their refund checks. Paulson, 78 F.2d at 99; see United States v. Carter, 906 F.2d 1375, 1377 (9th Cir.1990) ("refund is considered to have been made on the date the taxpayer received the refund check"); see also 14 Jacob Mertens, Jr., The Law of Federal Income Taxation Sec. 54(a). 71 (rev. ed. 1993) (Sec. 7405 suit must be brought "within two years from the date of delivery of the refund check"); Michael I. Saltzman, IRS Practice and Procedure p 14.08[g] at 14-60 (2d ed. 1991) (same). The government's complaint, filed exactly two years later, was timely.
 
 C
 
 21
 Taxpayers Kevin and Stephanie O'Gilvie also assert that because their refunds were submitted to the Joint Committee on Taxation for approval under I.R.C. Sec. 6405(a), the United States cannot seek judicial review. Section 6405(a) at that time provided
 
 
 22
 [n]o refund or credit of any income ... tax ... in excess of $200,000 shall be made until after the expiration of 30 days from the date upon which a report giving the name of the person to whom the refund or credit is to be made, the amount of such refund or credit, and the summary of facts and the decision of the Secretary, is submitted to the Joint Committee on Taxation.[7]
 
 
 23
 Plaintiffs assert that judicial review of the Secretary's approved decision would usurp congressional legislative power.
 
 
 24
 We first note that under Sec. 6405(a) the Joint Committee merely received a report of the refunds and did not object to them, thus the Committee did not affirmatively approve the refunds. See Philadelphia & Reading Corp. v. United States, 944 F.2d 1063, 1067 (3d Cir.1991) ("If the Joint Committee does not reject the refund [reported under Sec. 6405(a) ] within the thirty-day period, the IRS must then process the refund."). Once the IRS has submitted its report, summary of facts and decision of the Secretary to the Joint Committee on Taxation and that Committee has passed on the report, we see no constitutional or statutory impediment to judicial review of refunds. Cf. Oxford Life Ins. Co. v. United States, 574 F.Supp. 1417, 1428 (D.Ariz.1983), aff'd in part and rev'd in part on other grounds, 790 F.2d 1370 (9th Cir.1986) (holding that it could not rule on whether government was entitled to recover refund until after the IRS submitted its report, summary of facts and decision of Secretary to the Joint Committee on Taxation pursuant to 26 U.S.C. Sec. 6405).
 
 
 25
 We believe that Sec. 6405 was enacted so that the Committee could be involved in oversight of payments from the Treasury, not to prevent judicial review of refund decisions. As the government points out, if we were to accept taxpayers' argument, the government could never seek review of a refund that had been approved by the Committee. We hold that the district court had jurisdiction to review the refund, and thus we have jurisdiction to review the district court's determination.
 
 III
 
 26
 We now address the substantive issue whether punitive damages in a products liability action for wrongful death are excludable from gross income under Sec. 104(a)(2). We review this issue of law de novo. See Estate of Moore v. Commissioner, 53 F.3d 712, 714 (5th Cir.1995).
 
 
 27
 Section 61(a) of the Internal Revenue Code defines "gross income" broadly: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." I.R.C. Sec. 61(a). Thus, Congress intended to "tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). Plaintiffs assert that the punitive damages award in the instant case were excluded from gross income by I.R.C. Sec. 104(a)(2), which provided:[8]Sec. 104. Compensation for injuries or sickness.... [G]ross income does not include--
 
 
 28
 ....
 
 
 29
 (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness.[9]
 
 
 30
 Four Circuits have held that noncompensatory punitive damages are not received "on account of" personal injuries; therefore they are not excludable from gross income under Sec. 104(a)(2). See Wesson v. United States, 48 F.3d 894 (5th Cir.1995); Hawkins v. United States, 30 F.3d 1077 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); Reese v. United States, 24 F.3d 228 (Fed.Cir.1994); Commissioner v. Miller, 914 F.2d 586 (4th Cir.1990). These decisions begin with the threshold determination that the language of Sec. 104(a)(2), that gross income does not include "the amount of any damages received ... on account of personal injuries or sickness," is ambiguous. They then interpret the statute and determine that Congress intended to exclude only damages awarded to compensate for a tort-like injury, relying on some or all of the following: (1) the statutory context and title, (2) the principle that exclusions from income should be construed narrowly, (3) the policy and legislative history of Sec. 104, (4) a Treasury Revenue Ruling addressing this issue, (5) the 1989 amendment to Sec. 104(a)(2), and (6) Supreme Court cases discussing Sec. 104(a)(2) in other contexts. Because punitive damages (generally) are not intended to compensate, but to deter and punish, these circuits conclude that Sec. 104(a)(2) does not exclude punitive damages from income.[10]
 
 
 31
 In contrast, the Sixth Circuit recently held that the plain language of Sec. 104(a)(2) unambiguously exempts punitives from gross income, see Horton v. Commissioner, 33 F.3d 625, 630 (6th Cir.1994). The Horton Court found that the "plain meaning of the broad statutory language [of Sec. 104(a)(2) ] simply does not permit a distinction between punitive and compensatory damages." Id. at 631 (citation omitted). That opinion relied on the Supreme Court's opinion in United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).
 
 
 32
 The issue in Burke was whether a claim under Title VII of the Civil Rights Act of 1964 sought to redress "a personal injury" under Sec. 104(a)(2). Id. at 237, 112 S.Ct. at 1872. The Court stated that the statute was ambiguous and the legislative history was not instructive. Therefore, the Court relied on the regulation relating to the statute, which defined "damages" as "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights." 26 C.F.R. Sec. 1.104-1(c). The Court noted that under traditional tort law, a variety of remedies are available, including pain and suffering, emotional distress, harm to reputation, and punitive damages. Because Title VII does not provide these types of remedies, the Court concluded that a Title VII claim was not a type of personal injury claim.
 
 
 33
 Relying on Burke, the Horton opinion concluded that in determining whether an award is excludable under Sec. 104(a)(2), it should focus exclusively " 'on the nature of the claim underlying [the taxpayer's] damages award.' " Horton, 33 F.3d at 631 (quoting Burke, 504 U.S. at 237, 112 S.Ct. at 1872). Further, it stated "[t]his is 'the beginning and end of the inquiry.' " Horton, 33 F.3d at 631 (citation omitted).[11]
 
 
 34
 The flaw in the Horton analysis is that Burke focused on the nature of the claim to determine if it involved a personal injury under Sec. 104(a)(2); it did not address whether punitive damages were "received on account of" personal injuries or sickness and thus excludable under Sec. 104(a)(2). See Wesson, 48 F.3d at 901. This view of Burke is supported by the recent opinion in Commissioner v. Schleier, --- U.S. ----, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995).
 
 
 35
 Schleier addressed whether ADEA liquidated damages are excludable under Sec. 104(a)(2), holding that they are not. The Supreme Court clarified that
 
 
 36
 the plain language of Sec. 104(a)(2), the text of the applicable regulation, and our decision in Burke establish two independent requirements that a taxpayer must meet before a recovery may be excluded under Sec. 104(a)(2). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness."
 
 
 37
 Id. at ----, 115 S.Ct. at 2167. Thus Schleier made plain that Horton, and the district court in the instant case, misconstrued Burke as holding that Sec. 104(a)(2) required only that there be a tort-type injury.[12]
 
 
 38
 Neither the Burke nor the Schleier Court addressed the question whether the phrase in Sec. 104(a)(2) "on account of" personal injuries is ambiguous. With respect to this we agree with the four circuits that have found it is susceptible of at least two meanings:
 
 
 39
 [T]he language "on account of" [may] describe a causal relationship between damages and injury according to which damages are received "on account of" a personal injury whenever a showing of personal injury is a prerequisite for the award of those damages. In other words, any damages ultimately received in a case involving personal injury are damages received "on account of" that personal injury. [Another interpretation is] one which defines a causal relationship according to which damages are received "on account of" personal injuries only when the injury in and of itself justifies such damages. Under [this] interpretation, punitive damages are not encompassed by the exclusion, because those damages are received, not because of a personal injury, but in large part "on account of" a defendant's egregious conduct and the jury's desire to punish and deter such conduct.
 
 Reese, 24 F.3d at 230-31.[13]
 
 40
 Thus, "[s]ection 104(a)(2) could mean that all damages recovered in a personal injury suit are excluded, or it could mean that only those damages that purport to compensate the plaintiff for the personal injury suffered are received on account of personal injury." Wesson, 48 F.3d at 897. Because the phrase "on account of personal injury" is ambiguous, we must ascertain what Congress intended. In doing so, we look to the design and language of the statute as a whole, as well as to external aids that may reveal Congress' intent. See Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).
 
 
 41
 The title of Sec. 104, "Compensation for injuries or sickness," suggests that Congress intended "to exclude [from gross income] damages which compensate a taxpayer for injuries." Hawkins, 30 F.3d at 1083 (emphasis added). All of the subsections of Sec. 104 address replacement for losses resulting from injury or sickness, and thus are compensatory in nature.[14] Read in context, then, Sec. 104(a)(2) logically addresses compensatory payments. Reese, 24 F.3d at 231 (citing King v. Saint Vincent's Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("meaning of statutory language, plain or not, depends on context")). This restrictive reading of Sec. 104(a)(2) is bolstered by "the default rule of statutory interpretation that exclusions from income must be narrowly construed." Schleier, --- U.S. at ----, 115 S.Ct. at 2163 (quoting Burke, 504 U.S. at 248, 112 S.Ct. at 1878).
 
 
 42
 We also look to the legislative history to construe an ambiguous statutory phrase. See Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 339-40, 84 L.Ed. 340 (1940) (statute must be construed in light of legislative purpose). The Federal Circuit extensively discussed the legislative history of Sec. 104(a)(2) in Reese, 24 F.3d at 232-33. The predecessor statute to Sec. 104, Sec. 213(b)(6) of the Revenue Act of 1918, was enacted because:
 
 
 43
 Under the present law it is doubtful whether amounts received through accident or health insurance, or under workmen's compensation acts, as compensation for personal injury or sickness, and damages received on account of such injuries or sickness, are required to be included in gross income. The proposed bill provides that such amounts shall not be included in gross income.
 
 
 44
 H.R.Rep. No. 767, 65th Cong. 2d Sess. 9-10 (1918) (quoted in Reese, 24 F.3d at 233). The Federal Circuit concluded that the Sec. 104 exclusions are based on the theory of "conversion of capital assets," and that "it would be inconsistent with the legislative history to treat punitive damages as excludable from income, since punitive damages in no way resemble a return of capital." 24 F.3d at 233 (citing Glenshaw Glass, 348 U.S. at 432 n. 8, 75 S.Ct. at 478 n. 8 ("The long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages.... Damages for personal injury are by definition compensatory only.")).
 
 
 45
 Other circuits have found the idea that Sec. 104(a)(2) is limited to compensatory damages consistent with the supposed underlying purpose of Sec. 104 to make the taxpayer whole. See, e.g., Hawkins, 30 F.3d at 1083-84. However, this rationale is somewhat problematic. If, for example, a plaintiff recovers for wages lost due to his being injured in an accident, that amount would be excludable from gross income under Sec. 104(a)(2), and thus not taxable. But if he had actually worked his wages would be reportable income subject to taxes; thus the Sec. 104(a)(2) exclusion has made him more than whole. See Hawkins, 30 F.3d at 1087 (Trott, J., dissenting).
 
 
 46
 We are further troubled by the language of the 1989 amendment to Sec. 104(a)(2), effective after the instant case was brought, but surely bearing on the question of congressional intent. The amendment added the provision that "Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." The taxpayers contend that this amendment, which uses narrowing language, compels the conclusion that punitive damages were excludable under Sec. 104(a)(2) before the amendment.
 
 
 47
 Revised section 104 utilizes a double negative.... Since punitive damages in a case not involving physical injury or physical sickness are singled out as being includable in gross income, the clear implication of Congress' phraseology is that punitive damages in a case involving physical injury or physical sickness are excludable, and were excludable even before the amendment.
 
 
 48
 Horton, 33 F.3d at 631 n. 12; see also Hawkins, 30 F.3d at 1086-87 (Trott, J., dissenting) (stating that if punitive damages were taxable before and after the amendment, as Ninth Circuit majority held, the amendment was meaningless because punitive damages were already taxable).[15]
 
 
 49
 The Ninth and Fifth Circuits have rejected this argument, pointing out that " 'Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases.' " Wesson, 48 F.3d at 901 (quoting Hawkins, 30 F.3d at 1082). These courts reasoned that Congress adopted the amendment in part to overrule then-recent cases which held that damages received in non-physical injury cases were excludable under Sec. 104(a)(2). See Threlkeld v. Commissioner, 848 F.2d 81, 83-84 (6th Cir.1988); Roemer v. Commissioner, 716 F.2d 693, 700 (9th Cir.1983); see also Miller v. Commissioner, 93 T.C. 330, 1989 WL 104238 (1989) (later reversed, Commissioner v. Miller, 914 F.2d 586 (4th Cir.1990)).
 
 
 50
 The legislative history of the 1989 amendment indicates the original House of Representatives bill would have made all damages received in non-physical injury cases taxable. See H.R.Rep. No. 101-247, 101st Cong., 1st Sess. at 1354-55, reprinted in 1989 U.S.C.C.A.N. at 1906, 2824-25. The Senate refused to pass the House version, and the final bill was a compromise. See H.R.Rep. No. 101-386, 101st Cong., 1st Sess. at 623, reprinted in 1989 U.S.C.C.A.N. at 3225-26. It is apparent to us that when Congress was debating the amendment it believed that Sec. 104(a)(2) applied to punitive as well as compensatory damages. As the Hawkins court pointed out, however, even if that was what Congress believed, it does not "indicate that Congress gleaned the true intent of previous Congresses, only that Congress was aware that courts had recently so interpreted the section." Hawkins, 30 F.3d at 1082 n. 6. Further, if Congress was concerned primarily with non-physical injury cases, it simply may not have considered punitive damages received in physical injury cases or it may have been " 'deferring to the courts' " on this issue. Id. at 1082 n. 7 (citation omitted).[16] The Ninth Circuit expressed doubt, given its belief that excluding punitive damages is inconsistent with Sec. 104(a)(2)'s title and purpose, that Congress intended to exclude any noncompensatory punitive damages. However, that court "express[ed] no opinion on the excludability of punitive damages received after 1989 in physical injury cases," and expressed a "hope that Congress will shortly clear up the issue." Id.
 
 
 51
 We believe that using the amendment to interpret Congress' intent in 1954 (or 1918) is a questionable practice, particularly because of the long lapse of time and because the legislative history of both the original statute and the amendment are not enlightening. See Wesson, 48 F.3d at 901 (" 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one' ") (quoting United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960)). Even if we were to agree with the Sixth Circuit's Horton opinion that the 1989 amendment at the very least suggests punitives were excludable under Sec. 104 before the amendment, much of its reasoning, which is similar to that of the district court in the instant case, was undermined by the Supreme Court in Schleier.
 
 
 52
 In sum, it is not clear whether Congress intended to exclude punitive damages from income under Sec. 104(a)(2). Although "good reasons tug each way" in this case, we need not decide "which tug harder," because we must follow the default rule that exclusions from income are narrowly construed. Burke, 504 U.S. at 248, 112 S.Ct. at 1878 (Souter, J., concurring). We thus join the majority of the circuits that have addressed this issue in holding that Sec. 104(a)(2) does not exclude punitive damages from income.[17]
 
 
 53
 REVERSED.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Senior United States District Judge, United States District Court for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation
 
 
 [1]
 Compare Wesson v. United States, 48 F.3d 894 (5th Cir.1995); Hawkins v. United States, 30 F.3d 1077 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); Reese v. United States, 24 F.3d 228 (Fed.Cir.1994) and Commissioner v. Miller, 914 F.2d 586 (4th Cir.1990) with Horton v. Commissioner, 33 F.3d 625, 630 (6th Cir.1994)
 
 
 [2]
 He sought a refund of $695,421, the tax that resulted from including the punitive damages in income
 
 
 [3]
 Kelly O'Gilvie had filed in February 1991 a second administrative claim for refund for the 1988 tax year. That claim asserted an overpayment of taxes for 1988 in addition to the overpayment previously claimed with respect to the punitive damages. The alleged additional overpayment arose from interest he received on the portion of the punitive damages award that was remitted by the district court but reinstated by our court. The additional overpayment claimed was the tax paid on interest received for the period between the entry of the district court's original judgment, which was for $1,350,000, and the judgment entered after the remand, which was in the amount of $10,000,000. The interest computed at the federal postjudgment rate pursuant to 28 U.S.C. Sec. 1961 totalled $875,000. The claim sought a refund of $260,437 in taxes paid on that interest. The Internal Revenue Service took no action on that claim
 
 
 [4]
 Kevin and Stephanie O'Gilvie each requested a refund of $346,319
 
 
 [5]
 The district court order stated:
 On August 26, 1992, pursuant to a Memorandum and Order of even date, the court entered judgment in favor of the plaintiff on plaintiff's motion for summary judgment (Doc. 34). Since that time, it has been brought to the court's attention that there is an issue which was raised in the amended pretrial order filed April 23, 1992 (Doc. 25) which has not yet been fully briefed by the parties. Both parties desire to have the issue ruled upon before a final judgment is entered.
 Accordingly, pursuant to Rule 60(a), Fed.R.Civ.P., the judgment entered on August 26, 1992 is hereby withdrawn, subject to reinstatement at the conclusion of the case.
 IT IS SO ORDERED.
 U.S.App. 46.
 
 
 [6]
 No. 94-3058 is the government's appeal from the district court order of February 22, 1994, dismissing the action for erroneous refund against Kevin and Stephanie O'Gilvie
 
 
 [7]
 A 1990 amendment increased the amount required to be submitted to the Joint Committee from $200,000 to $1,000,000, see Pub.L. No. 101-508, Sec. 11834(a), 104 Stat. 1388, 1388-560 (1990)
 
 
 [8]
 The language quoted is the version of the statute in effect at the time the punitives were awarded to the O'Gilvies, and thus it controls here. The statute was later amended, see Pub.L. No. 101-239, Sec. 7641(a), 103 Stat. 2106, 2379 (1989). The text of this amendment is discussed infra
 
 
 [9]
 The district court initially found that the punitive award did not fit the Sec. 104(a)(2) exception, implicitly rejecting plaintiffs' assertion that the plain language of the statute excludes any damages received as a result of the underlying personal injury lawsuit. The court thus found that the phrase "on account of" was ambiguous, and that the government's view that punitive damages are not awarded "on account of personal injury" was more reasonable when viewed in light of the statute's underlying purpose "to assist taxpayers burdened with sickness or injury and make them whole from a previous loss of personal rights." D.C. memo and order of May 26, 1992, U.S.App. 31, 1992 WL 123806 (citing Commissioner v. Miller, 914 F.2d 586 (4th Cir.1990)). The district court determined that the punitive award was not received "on account of personal injury" and therefore was gross income
 The same day the district court issued its initial decision, the Supreme Court issued an opinion in United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1995), which addressed whether settlement of a Title VII back pay claim was excludable under Sec. 104(a)(2). On plaintiff's motion for reconsideration, the district court determined that the Burke decision "altered the analysis" and required a reversal of its decision. D.C. memo and order of August 26, 1992, U.S.App. 42-44, 1992 WL 223847. It stated that "[i]n our previous order, this court focused on the nature of the punitive damage award itself, rather than the nature of the underlying claim.... The [Burke ] opinion makes clear that the proper inquiry for purposes of Sec. 104(a)(2) is on the nature of the claim underlying the taxpayers' damages award." Id. at 43. Because this is a tort-like suit, the court found that the punitive award was excludable from income under Sec. 104(a)(2) and granted plaintiff's motion for summary judgment.
 
 
 [10]
 These courts looked to state law to determine whether punitives in each case were compensatory in nature, and found they were not. The O'Gilvies do not argue here that the punitives they received are compensatory in nature
 
 
 [11]
 The Horton court stated that because the taxpayer's claim was for a personal, physical injury, the entire recovery, including punitives, were received "on account of" their personal injuries. Horton, 33 F.3d at 631. It determined that the statute was not amenable to distinctions between punitive and compensatory damages. It also relied to some extent upon the fact that punitive damages in Kentucky serve a compensatory function. While superficially this appears to be a basis for distinguishing Horton, the Sixth Circuit broadly rejected the suggestion that even noncompensatory punitive damages should be included in gross income. See id. at 631-32
 
 
 [12]
 Schleier further aids our analysis by its statement that "each element of [a hypothetical] settlement is recoverable not simply because the taxpayer received a tort settlement, but rather because each element of the settlement satisfies the requirement ... that the damages were received 'on account of personal injuries or sickness.' " Schleier, --- U.S. at ----, 115 S.Ct. at 2164 (emphasis added)
 
 
 [13]
 Similarly, Miller explained that "on account of" suggests causation, but that causation could be either "but-for causation"--i.e., the plaintiff would not have recovered punitives but for the injury, or it could be sufficient causation--e.g., personal injury alone does not sustain a punitive damages award, a plaintiff must also show egregious conduct. Miller, 914 F.2d at 589-90
 
 
 [14]
 "Section 104(a)(1) exempts amounts received under workmen's compensation acts; section 104(a)(3) exempts amounts received through accident or health insurance; section 104(a)(4) exempts amounts received as a pension, annuity, or similar allowance for personal injuries or sickness; and section 104(a)(5) exempts amounts received as disability income." Reese, 24 F.3d at 231
 
 
 [15]
 Another way to read the amendment is to assume all punitive damages were taxable before 1989 and the amendment was intended to exclude from gross income punitives in physical injury cases. However, if that was the case, Congress could simply have amended Sec. 104 to read: "[p]unitive damages in cases involving physical injury or sickness are excludable." Hawkins, 30 F.3d at 1087 (Trott, J., dissenting)
 
 
 [16]
 The court also stated that "even if the 1989 amendment makes punitive damages received in physical injury cases excludable, this implication could be inadvertent." 30 F.3d at 1082 n. 7
 
 
 [17]
 Because we have determined that punitive damages are not excludable from income, we need not address Kelly O'Gilvie's argument that interest on the portion of punitive damages that was subject to the remittitur constituted a punitive damages award